## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

QUINYAN SKINNER, individually and on
behalf of all others similarly situated,

*Plaintiff*,

vs.

BMW OF NORTH AMERICA, LLC,

*Defendant*.

**Civil Action No.**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiff Quinyan Skinner, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following for her Complaint against Defendant BMW of North America. ("BMW" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1.      Vehicle manufacturers have certain basic rules and procedures that must be followed. When a vehicle manufacturer sells a vehicle, it has a duty to ensure that the vehicle functions properly and safely for its advertised use and is free from defects. When a vehicle manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the vehicle. When a vehicle manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of these listed duties and rules.

2.      Plaintiff brings this action on behalf of herself, and all similarly situated persons who purchased or leased any BMW model that was recalled and manufactured from the years

2012 through 2018 ("Class Vehicles"). The recall applies to the following BMW models[1]:

| MAKE | MODEL | YEARS |
|---|---|---|
| BMW | 228I | 2014-2016 |
| BMW | 228XI | 2014-2016 |
| BMW | 328I | 2012-2016 |
| BMW | 328XI | 2012-2016 |
| BMW | 428I | 2014-2016 |
| BMW | 428XI | 2015-2016 |
| BMW | 528I | 2012-2016 |
| BMW | X1 | 2012-2015 |
| BMW | X3 | 2013-2017 |
| BMW | X4 | 2015-2018 |
| BMW | X5 | 2016-2018 |
| BMW | Z4 | 2012-2016 |

3.      This action is brought to remedy various violations of law in connection with Defendant's manufacture, marketing, advertising, selling, warranting, and servicing of the Class Vehicles.

4.      Specifically, these Class Vehicles have malfunctions regarding the improperly sealed electrical connector on the water pump that may allow water to collect on the plug connector, causing an electrical shortage, which could increase the risk of a thermal event and,

---

[1] https://www.newsbreak.com/cbs-news-510078/3567896591371-bmw-recalls-more-than-720000-cars-because-electric-water-pump-issue?noAds=1&_f=app_share&s=i3 (last accessed on August 22, 2024)

potentially, a fire. [2]

5.      On August 20, 2024, BMW recalled 720,796 of the above referenced Class Vehicles ("Recall").[3]

6.      The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

8.      This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of Class Vehicles throughout this District.

9.      Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District, given that Defendant sells and distributes their vehicles throughout the United States and within this District.

---

[2] https://www.cbsnews.com/news/bmw-recall-720000-vehicles-electric-water-pump-fire-risk-2024/  (last accessed on August 22, 2024.
[3] *Id.*

## PARTIES

10.     Quinyan Skinner is a citizen of the State of South Carolina and resides in Columbia South Carolina. Columbia is located within Richland County, South Carolina.

11.     In March of 2021, Plaintiff purchased her 2018 BMW X5.

12.     Based on BMW's active and persistent promotions touting the quality of its vehicles and her admiration of BMW vehicles, Plaintiff considered BMW a quality company with a strong reputation for producing reliable and safe vehicles.

13.     In addition to BMW's reputation through its marketing and promotion, Plaintiff decided on the 2018 BMW X5 because she believed it was a high-quality vehicle after a salesman convinced her that the vehicle was safe, highly reliable and came with great technological features.

14.     Since purchasing her 2018 BMW X5, Plaintiff has only taken the vehicle to the same dealership, BMW of Columbia, for its routine maintenance as recommended by both the vehicle alert system and the Service Department.

15.     However, through Plaintiff's consistent visits to BMW of Columbia Service Department, she has never been told of any recalls or defects related to the improperly sealed electrical connector on the water pump. Plaintiff was never informed  that water could reach the plug connector, causing an electrical shortage, which could increase the risk of a thermal event and cause a fire.

16.     Defendant is a Delaware corporation, with its principal place of business located at 300 Chestnut Ridge Road, Woodcliff Lake, NJ 07677.  Defendant is a corporation organized and in existence under the laws of the State of New Jersey.

17.     Defendant designs, manufactures, markets, distributes, services, repairs, sells, and

leases vehicles, including the Class Vehicles, nationwide and in the state of South Carolina. Defendant is the warrantor and distributor of the Class Vehicles in the United States.

18.     Defendant, through various entities, markets, distributes, warrants, and sells BMW automobiles and parts for those automobiles, including the Class Vehicles, in multiple locations across the United States, including the state of South Carolina.

## FACTUAL ALLEGATIONS

19.     As discussed earlier and in more detail below, the Class Vehicles contain a design defect that causes a serious safety concern. The design defect with the Class Vehicles is contained in the improperly sealed electrical connector on the water pump.

20.      In more detail, the Class Vehicle's problem stems from a potential short circuit on a connector, occurring under the hood and originating from the water pump, that could cause a fire.[4]

21.     As demonstrated by the facts above, there is no foreseeable reason for any of the individual parts to fail. Rather, the failure is caused by Defendant's improper engineering, design, or manufacturing.

22.     Over 700,000 of the Class Vehicles with a defective electrical connector on the water pump have been sold in America.[5]

23.     The result of Defendant's Recall, which includes a free replacement of the water pump and plug connector and the installation of a protective shield[6], will cost Plaintiff hours of her time.

---

[4] https://www.motor1.com/news/730779/bmw-recalls-720000-cars-fire-risk/ (last accessed on August 22, 2024)
[5] https://www.newsbreak.com/cbs-news-510078/3567896591371-bmw-recalls-more-than-720000-cars-because-electric-water-pump-issue?noAds=1&_f=app_share&s=i3 (last accessed on August 22, 2024)
[6] *Id.*

24.     Even if one was to presume that the Recall was effective and offered a true fix, which is by no means a fair presumption, Plaintiff is still burdened with a vehicle that has been devalued by Defendant's actions because the value of a car with a known history of a defective electrical connector on the water pump and a potential fire hazard is worth much less than a car with properly working electrical connector on the water pump, or at least not having a history of defects with risks of the car catching on fire.

25.     In addition to the sheer amount of time spent in repair, Plaintiff, like every other Class Member, must spend time and money to transport herself and her defective Class Vehicle to a BMW certified mechanic. For Plaintiff, this service center is the BMW of Columbia in 250 Killian Commons Parkway, Columbia, SC 29203 and her commute begins at her home in 746 Stoneroot Drive Columbia, South Carolina.  Plaintiff's repair-related commute is roughly a 6.1miles trip, a 10-minute one way trip.

26.      In addition to the sheer amount of time spent in repairing her vehicle, Plaintiff is faced with another difficult expense, the price of towing her vehicle. The average cost of towing, per mile, is $4.75 per mile.[7]  Given Plaintiff's roughly 6.1-mile commute, this cost amounts to $28.97, which Plaintiff must pay for her own Class Vehicle to be safely repaired.

27.     Given the additional time it takes for a tow truck to arrive, roughly thirty minutes, Plaintiff would spend more than an hour with her vehicle, unless of course, one is to assume that Plaintiff drives her potentially flammable Class Vehicle to the dealership.

28. In all, Defendant's Recall amounts to tens of thousands of hours and dollars needlessly taken from Plaintiff and other Class Vehicle owners.

---

[7] https://www.thezebra.com/resources/driving/how-much-does-towing-a-car-cost/ (last accessed on August 22, 2024).

## CLASS ACTION ALLEGATIONS

29.     Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed.

R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as

follows:

> **Nationwide Class:** All persons in the United States who purchased or leased the following recalled BMW Models: Model 228I manufactured from 2014 through 2016; Model 228XI manufactured from 2014 through 2016; Model 328I manufactured from 2012 through 2016; Model 328XI manufactured from 2012 through 2016; Model 428I manufactured from 2014 through 2016; Model 428XI manufactured from 2015 through 2016; Model 528I manufactured from 2012 through 2016; Model X1 manufactured from 2012 through 2015; Model X3 manufactured from 2013 through 2017; Model X4 manufactured from 2015 through 2018; Model X5 manufactured from 2016 through 2018; and Model Z4 manufactured from 2012 through 2016.

> **New Jersey Subclass:** All persons from New Jersey who purchased or leased the following recalled BMW Models: Model 228I manufactured from 2014 through 2016; Model 228XI manufactured from 2014 through 2016; Model 328I manufactured from 2012 through 2016; Model 328XI manufactured from 2012 through 2016; Model 428I manufactured from 2014 through 2016; Model 428XI manufactured from 2015 through 2016; Model 528I manufactured from 2012 through 2016; Model X1 manufactured from 2012 through 2015; Model X3 manufactured from 2013 through 2017; Model X4 manufactured from 2015 through 2018; Model X5 manufactured from 2016 through 2018; and Model Z4 manufactured from 2012 through 2016.

> **South Carolina Subclass:** All persons from South Carolina who purchased or leased the following recalled BMW Models: Model 228I manufactured from 2014 through 2016; Model 228XI manufactured from 2014 through 2016; Model 328I manufactured from 2012 through 2016; Model 328XI manufactured from 2012 through 2016; Model 428I manufactured from 2014 through 2016; Model 428XI manufactured from 2015 through 2016; Model 528I manufactured from 2012 through 2016; Model X1 manufactured from 2012 through 2015; Model X3 manufactured from 2013 through 2017; Model X4 manufactured from 2015 through 2018; Model X5 manufactured from 2016 through 2018; and Model Z4 manufactured from 2012 through 2016.

30. Together, the Nationwide Class, New Jersey Subclass and South Carolina Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

31. Excluded from each of the putative classes are any person who falls within the definitions if the person is: (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending

32. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

33. The particular members of the (i) Nationwide Class, (ii) New Jersey Subclass and (ii) South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

34. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

35. The Proposed Classes are so numerous that the joinder of all members is impracticable.

36. This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

37.     Upon information and belief, the Class is so numerous that the joinder of all members

is impracticable. While the exact number and identities of individual members of the Class are

unknown at this time, such information is in the sole possession of Defendant and obtainable

by Plaintiff only through the discovery process. Members of the Class may be notified of the

pendency of this action by recognized, Court-approved notice dissemination methods, which

may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published

notice.

**Typicality: Fed R. Civ. P. 23(a)(3)**

38.     Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a

Class Vehicle that contained the defective electrical connector on the water pump found in all

other Class Vehicles.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

39.     Plaintiff is an adequate class representative because her interests do not conflict with

the interests of the Class she seeks to represent.  Plaintiff has retained counsel competent and

highly experienced in complex and class action litigation, and she intends to prosecute this

action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiff

and her counsel.

**Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)**

40.     A class action is superior to all other available means for the fair and efficient

adjudication of the claims of Plaintiff and Class members and questions of law and fact

common to all class members predominate over questions affecting only individual class

members. Class members can be readily identified and notified based on, inter alia,

Defendant's business records or other sources including those from the state of South Carolina.

**Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)**

41.    Common Questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

     a.  Whether Class Vehicles contain the alleged defective electrical connector on the water pump;

     b.  Whether the defective electrical connector on the water pump would be considered material by a reasonable consumer;

     c.  Whether the defective electrical connector on the water pump would constitute an unreasonable safety risk;

     d.  Whether Defendant had a duty to disclose the defect contained in the electrical connector on the water pump to Plaintiff and other Class members;

     e.  Whether Defendant knew or reasonably should have known of the defective electrical connector on the water pump before it sold and leased Class Vehicles to Plaintiff and Class Members;

     f.  Whether defective electrical connector on the water pump has diminished the value of the Class Vehicles;

     g.  Whether the defective electrical connector on the water pump is capable of being repaired;

     h.  Whether Defendant should be declared financially responsible for notifying all Class Members of the problems with the Class Vehicles and for the costs and expenses of repairing, replacing, or otherwise remedying the defective electrical connector on the water pump;

     i.  Whether Defendant is obligated to inform Class Members of their right to seek reimbursement for having paid to diagnose, repair, or replace their defective electrical connector on the water pump;

     j.  Whether Defendant breached the implied warranty of merchantability pursuant to state law and/or the UCC;

k.  Whether Defendant is liable for fraudulent omission;

l.  Whether Defendant was unjustly enriched;

m.  Whether Plaintiff and other Class members are entitled to damages and other monetary relief.

## CAUSES OF ACTION

### COUNT I
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

42.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

43.    Plaintiff brings this count on behalf of herself and the Classes.

44.    Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Class Vehicles.

45.    The Class Vehicles are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Class Vehicles, as goods, were purchased.

46.    Defendant entered into agreements with consumers to sell the Class Vehicles to be used by Plaintiff and Class Members for personal use.

47.    The implied warranty of merchantability included with the sale of each Class Vehicle means that Defendant guaranteed that the Class Vehicles would be fit for the ordinary purposes for which cars are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

48.    Defendant breached the implied warranty of merchantability because the Class Vehicles are not fit for their ordinary purpose of providing reasonably reliable and safe

11

transportation. After all, Defendant did not indicate that the Class Vehicles would contain a defective electrical connector on the water pump.

49.    Given that Plaintiff and Class Members are unable to safely drive the Class Vehicles without risk of the Class Vehicles catching on fire, the Class Vehicles are not fit for their particular purpose of legal transportation and usage. Defendant's Recall does nothing to truly address this risk, given that there is no explanation on the cause of the Defect. Rather, the Recall places Plaintiff in a much worse bargaining position compared to if Defendant's had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

50.    Defendant's warranty expressly applies to the purchaser of the Class Vehicles, creating privity between Defendant and Plaintiff and Class Members.

51.    Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

52.    Defendant provided sufficient notice of its breaches of implied warranties associated with the Class Vehicles. Defendant was put on actual notice of its breach though the contract between Plaintiff, Class members, Defendant, and its review of consumer complaints.

53.    Had Plaintiff, Class Members, and the consuming public known that the Class Vehicles would have a defective electrical connector on the water pump that created a fire hazard that could engulf the Class Vehicles in flames at any time, they would not have purchased the Class Vehicles or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the defective electrical connector on the water pump, they would not have purchased Class Vehicles.

54.     As a direct and proximate result of the foregoing, Plaintiff and the Class suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

55.     Plaintiff suffered injury in that she purchased a vehicle that is worthless. For all intents and purposes, Plaintiff's vehicle is now a notoriously unsafe vehicle which could catch fire at any time, while in park or while driving.

56.     Plaintiff also suffered economic loss in reference to the value of her vehicle.  As a result of Defendant's Recall, Plaintiff's vehicle resale value is now diminished.  When Plaintiff intends to sell her Vehicle, the reputation of being a faulty vehicle will harm the resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

57.     Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying required repairs. As discussed above, Plaintiff will spend hours upon hours tending to Defendant's recall. Had Defendant produced a vehicle that was roadworthy and reliable, Plaintiff would not have had to spend hours upon hours of her life tending to this Recall. Plaintiff did not bargain for, or pay for, a vehicle that could catch on fire in park or while driving and which he has to park outside due to the risk of fire to her structures such as her garage or home.

## COUNT II
## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. 56:8)

58.     Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiff brings this count on behalf of herself and the Classes.

60.    Defendant had actual knowledge that the Class Vehicles suffered from an inherent defective electrical connector on the water pump, was defectively designed and/or manufactured, and was not suitable for their intended use prior to their sale.

61.    Having been aware of the defective electrical connector on the water pump and knowing that Plaintiff and Class members could not have reasonably been expected to know of the Defect, Defendant had a duty to disclose the electrical connector on the water pump defect to Plaintiff and Class Members in connection with the sale of the Class Vehicle. Defendant had a further duty to disclose the Defect because:

a.    Defendant was in a superior position to know the true state of facts about the electrical connector on the water pump defect contained in the Class Vehicles, and Defendant knew these facts were not known or reasonably discoverable by Plaintiff or Class Members;

b.    Given the electrical connector on the water pump defect's technical and hidden nature, Plaintiff and Class Members lack the sophistication and expertise in vehicle components that would be necessary to discover the electrical connector on the water pump defect on their own;

c.    Defendant knew that the electrical connector on the water pump defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the omitted facts relating to the Defect were material because they directly impact the safety of the Class Vehicles and would have been part of the decision to buy or lease the Class Vehicles;

d.    Defendant made incomplete representations about the safety and reliability of the Class Vehicles while actively withholding and concealing the

material facts about the known defective nature of the Class Vehicles from Plaintiff and Class Members. In uniform advertising and materials provided with each Class Vehicle, Defendant intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the electrical connector on the water pump defect. Because it volunteered to provide information about the Class Vehicles that it marketed and offered for sale and lease to consumers, Defendant had the duty to disclose the whole truth.

62.  Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Class Vehicles, in direct breach of its duties.

63.  The fact that Defendant's Class Vehicles contained the defective electrical connector on the water pump is a material fact as any system defect that could potentially cause the vehicle to catch on fire is a critical defect, and a reasonable person would find it important when deciding the purchase or lease a new or used motor vehicle and because it directly impacts both the value and safety of the Class Vehicles purchased or leased by the Plaintiff and Class Members.

64.  Defendant was knowledgeable of the falsity of the safety of the defective electrical connector on the water pump and/or recklessly disregarded the truth or falsity of the dangerous nature of the electrical connector on the water pump defect.

65.  Defendant intended for Plaintiff and Class Members to rely and act upon such falsity as part of Defendant's commercial operations to sell vehicles—which they did by purchasing and leasing the Class Vehicles at the prices they paid while believing that their vehicles would not have a defective electrical connector on the water pump that would affect the quality,

reliability, and safety of the Class Vehicles.

66.     Plaintiff and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendant had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendant's deception on their own.

67.     Plaintiff and Class Members would not have purchased the Class Vehicles had they had known of such electrical connector on the water pump defect or would have paid less for them. Plaintiff and the Class did not know of such electrical connector on the water pump defect and relied upon the false presentation of safety in their purchases of Class Vehicles.

68.     The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Class Vehicles or pay a lesser price for them. Whether a vehicle catches fire when the electrical connector on the water pump short circuits and fails is a material safety concern. Had Plaintiff and Class Members known about the defective nature of the Class Vehicles, they would not have purchased or leased the Class Vehicles or would have paid less for them.

69.     Defendant actively concealed and suppressed these material facts, in whole or in part, in order to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendant and their products.  They did so at the expense of Plaintiff and Class Members.

70.     If Defendant had fully and adequately disclosed the electrical connector on the water pump defect to consumers, Plaintiff and Class Members would have seen such a disclosure.

71.     Through Defendant's omissions and concealment regarding the electrical connector on the water pump defect within the Class Vehicles, Defendant intended to induce, and did induce, Plaintiff and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

72.     Plaintiff and other Class Members justifiably relied on Defendant's omissions to their detriment.  This detriment is evident from Plaintiff's and Class Members' purchase or lease of Defendant's defective Class Vehicles.

73.     As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages.  Plaintiff and the Class reserve their right to elect either to (a) rescind their purchase or lease of the Defective Vehicles and obtain restitution or (b) affirm their purchase or lease of the Defective Vehicles and recover damages.

74.     Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Classes' rights and well-being to enrich Defendant.  Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

75.     Plaintiff suffered injury through Defendant's conduct in that he suffered economic loss and purchased a vehicle that is now worthless and unsafe.

76.     Plaintiff also suffered economic loss in reference to the value of her vehicle.  As a result of Defendant's Recall, Plaintiff's Vehicle's resale value is now diminished.  When Plaintiff intends to sell her Vehicle, the reputation of being a faulty vehicle will harm the

resale value and place Plaintiff in a much worse bargaining position compared to if Defendant had properly manufactured, designed, produced, distributed, and advertised Class Vehicles.

77.    Plaintiff also suffered damages in that Plaintiff has spent hours, and will spend hours more, tending to Defendant's Recall. Plaintiff has been greatly inconvenienced by Defendant's Recall.

**COUNT III**
**UNJUST ENRICHMENT**

78.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

79.    Plaintiff brings this count on behalf of herself and the Classes.

80.    Under New Jersey Law, because the parties had an express contract which was procured by fraud, it is equitable for Defendant to provide Plaintiff and Class members with restitution.

81.    Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Class Vehicles.

82.    Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class members.

83.    Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Class Vehicles without providing working electrical connector on the water pump in the Class Vehicles, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

84.    The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the

Class Members.

85.    Defendant manufactured, marketed, and sold the Class Vehicles under the guise of these Vehicles being safe, operable, and not subject to catching fire at any moment. Instead, Defendant sold vehicles with an inherent fire hazard that could engulf the car in flames at any moment.  Rather than refunding or reimbursing Plaintiff and Class members the difference in value related to the diminished resale value, Defendant has offered to simply fix the Class Vehicles with a fix that appears to do no more than replace the defective systems with no guarantee that the root cause of the problem is solved.

86.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**STRICT LIABILITY: DESIGN DEFECT**

87.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

88.    Plaintiff brings this count on behalf of herself and the Classes.

89.    At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the consuming public.

90.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

91.    At all times, Defendant held final design approval authority for the subject Class Vehicles.

92.    The electrical connector on the water pump defect could happen at any time when the improperly sealed electrical connector allows water to collect on the plug connector, causes an electrical shortage, which could increase the risk of a thermal event and, potentially, a fire.

93.    The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles' design and manufacture outweighs any benefit of the design.

94.    Defendant knew or should have known that Plaintiff and the Class Members would purchase and use the Class Vehicles without inspection for defect. Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealerships and/or other resellers.

95.    As a direct and proximate result of Defendant's conduct, including actions, omissions, and misrepresentations, Plaintiff and the Class have sustained damages:

   a.    Economic damages due to this Defect as they are now stuck with vehicles that are unsafe and relatively worthless when compared to the purchase price; and

   b.    Noneconomic damages including emotional distress, inconvenience, loss of enjoyment, past and future.

## COUNT V
## STRICT LIABILTY: MANUFACTURING DEFECT

96.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

97.    Plaintiff brings this count on behalf of herself and the Classes.

98.    At all times relevant, Defendant was engaged in the business of designing, manufacturing, marketing, testing, selling, distributing, and supplying the Class Vehicles and otherwise placed the Class Vehicles in the market and stream of commerce for sale to the

consuming public.

99.     Along with Class Vehicles, Defendant designs, manufactures and produces all sorts of other vehicles. Given Defendant's other vehicles are capable of having an electrical connector on the water pump that isn't improperly sealed and allows water to collect on the plug connector, cause an electrical shortage, overheat and catch fire, it logically follows that the Class Vehicles would share the same fate.

100.    The Class Vehicles presumably are capable of safe operation as Defendant produces many other vehicles that are capable of such safety and adequate operation.  Unfortunately, this presumption is not reality.  The Class Vehicles are in danger of overheating and catching fire at any moment due to the defective electrical connector on the water pump.

101.    Plaintiff and Class Members used the Class Vehicles in a reasonably foreseeable manner.

102.    At all times, Defendant held final manufacture approval authority for the subject Class Vehicles.

103.    The Class Vehicles' design is excessively dangerous.  The risk of danger in the Class Vehicles design and manufacture outweighs any benefit of the design.

104.    Defendant knew or should have known that Plaintiff and Class Members would purchase and use the Class Vehicles without inspection for defect.  Aside from being entirely uncommon for a consumer to disassemble and inspect a vehicle, it is also unlikely to be permitted by Defendant's dealership and/or other resellers.

105.    As a result of this faulty manufacture of the electrical connector on the water pump, the Class Vehicles are now relatively worthless when compared to their original purchase price and relative value and are unsafe.

106.    Given the loss of value and lack of safety, Plaintiff and Class Members have been damaged and will continue to suffer damages.

### COUNT IV
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY
### ACT (15 U.S.C. § 2301 *ET SEQ.*)

107.    Plaintiff incorporates by reference all the allegations contained in the foregoing paragraphs as if fully set forth herein.

108.    Plaintiff brings this count on behalf of herself and the Classes.

109.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

110.    Defendant is a "supplier" and "warrantor" within the meaning of the MMWA.

111.    The Class Vehicles are "consumer products" within the meaning of the MMWA.

112.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

113.    Defendant's express warranties are written warranties within the meaning of the MMWA.

114.    Defendant breached its warranties by offering for sale and selling the Class Vehicles, which were by design and construction defective and unsafe due to the electrical connector on the water pump defect recall. Defendant's actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Class Vehicles are inherently worth less compared to their value had the Class Vehicles been free of the electrical connector on the water pump defect.

115.    Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall and Defect as Plaintiff and the Class Members

have had to collectively spend thousands of hours and thousands of dollars in time and costs related to repairing the electrical connector on the water pump defect.

116.    Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Class, when the Vehicles fail to perform due to the Defect.

117.    As a result of these breaches, Plaintiff and Class Members have suffered damages.

118.    Plaintiff and Class Members seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Class may be entitled.

119.    Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class are now owners of vehicles that are worth significantly less, given the Defect and the notoriety therein.

120.    Plaintiff and Class Members suffered injury through Defendant's conduct in that Plaintiff and the Class have, or will have to, spend hours upon hours of their own time, and thousands of dollars in towing fees, in seeking repair for these Class Vehicles.  Regardless of Defendant's free repair, Plaintiff and the Class are still required to spend hours in time and thousands of dollars in bringing their vehicles to Defendants' dealership for repair.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A.  Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel:

B.  Declaring that Defendant is financially responsible for notifying the Proposed Class Members of the pendency of this action;

C.  Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.  Scheduling a trial by jury in this action;

E.  Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

F.  Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: October 3, 2024

Respectfully submitted,

**SULTZER & LIPARI, PLLC**

By:*/s/ Philip J. Furia*
Philip J. Furia, Esq.
Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

-AND-

Paul J. Doolittle Esq. (*Pro Hac Vice* forthcoming)
Seth Little Esq. (*Pro Hac Vice* forthcoming)
**POULIN | WILEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax:843-494-5536
Email: paul.doolittle@poulinwilley.com
        seth.little@poulinwilley.com
        cmad@poulinwilley.com